## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JENNIFER McGINITY,

     Plaintiff,

v.                            CASE NO.:  6:13-cv-1214-ACC-KRS

TRACFONE WIRELESS INC., d/b/a
NET10 WIRELESS,

     Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, JENNIFER MCGINITY, by and through her undersigned counsel, sues the Defendant, TRACFONE WIRELESS, INC., d/b/a NET 10 WIRELESS ("TracFone"), and in support thereof respectfully alleges the following:

## JURISDICTION AND VENUE

1.    This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and costs.

2.    Jurisdiction and venue for purposes of this action are appropriate and conferred by Florida Statutes.  Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §§1331 and 1337.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012).

3.    The alleged violations described in the Complaint occurred in Orange County, Florida.

**FACTUAL ALLEGATIONS**

4.      Plaintiff is a natural person, and citizen of the State of Florida, residing in Orange County, Florida.

5.      Plaintiff is a "called party" pursuant to the TCPA.   *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

6.      Defendant is a Delaware corporation and a citizen of the State of Florida with its principal place of business at 9700 N.W. 112th Avenue, Miami, FL 33178.

7.      This case involves a campaign of telephonic terror and harassment inflicted upon the Plaintiff by Defendant.

8.      On or about February 16, 2013, Plaintiff purchased a TracFone cell phone. As part of this initial transaction, Plaintiff was required to call (877) 836-2368 to activate her phone, pursuant to TracFone's instructions.

9.      When Plaintiff called TracFone's number, she spoke with someone that identified himself as a TracFone employee by the name of Ulwin Mundy.

10.     Mr. Mundy told Plaintiff in order to activate her TracFone cellular telephone he needed her to provide information including home address, birth date, social security number, email, a credit card number, security code and a security question.   Plaintiff provided this information.

11.     During the initial transaction Mr. Mundy also told Plaintiff, she needed to send $400.00.  Plaintiff hung up the telephone.

12.     What followed is one of the most outrageous telephone harassment cases imaginable.

13.     Shortly after Plaintiff hung up on Mr. Mundy her TracFone cell rang, when she answered it, there was a short pause and Mr. Mundy came on the line and asked Plaintiff to send money.  Plaintiff asked Mr. Mundy to stop calling her and hung up the phone again.  Plaintiff's cell rang immediately thereafter, when she answered there was dead air and then Mr. Mundy came on the line again.  This scenario happened over and over again.

14.     Thinking it would help stop the calls, Plaintiff explained to Defendant's agent and or employee Mr. Mundy the she felt ill and had cancer and was crippled as the result of a being hit by a drunk driver.  This did not stop the calls.

15.     On February 17, 2013, Mr. Mundy called Plaintiff.  Plaintiff begged Mr. Mundy to stop calling and explained it was her daughter's birthday.  Mr. Mundy told her he would kill her if she did not send money.  Mr. Mundy also said he would take away from her "what is most valuable" (meaning her daughter) if she did not send money.

16.     Mr. Mundy also actually called Plaintiff's daughter's cell phone and threatened her as well.

17.     Mr. Mundy told Plaintiff and Plaintiff's daughter "he knew where they lived."

18.     Mr. Mundy claimed he was going to sue the Plaintiff for the money.

19.     Plaintiff estimates she had over 100 conversations with Mr. Mundy.  Her husband, Michael McGinity, witnessed these conversations.  Plaintiff's husband also had numerous conversations with Mr. Mundy.  [Defendant provided one tape-recorded conversation with Mr. Mundy and the Plaintiff's husband that took place on February 18, 2018.  Plaintiff's husband in no uncertain terms told Mr. Mundy to stop calling and also

stated, "I am asking you politely please do not bother me or my family again."   Mr. Mundy insisted on speaking with Jennifer and said he knew she has cancer and "I am seeing all the account information."   This recording of Plaintiff's husband and Mr. Mundy was done without Plaintiff's husband's knowledge or permission, in violation of Florida law.   Defendant provided 3 other tape recordings from their system calling a cell phone of the Plaintiff who had not set up her voice mail. This is consistent with Plaintiff's claim she got another cell phone because she was trying to get away from the calls from Mr. Mundy.   Plaintiff reasonably believes all conversations between Mr. Mundy and Plaintiff and Mr. Mundy and Plaintiff's husband were tape-recorded.   However, the Defendant now objects to all discovery and refuses to provide any documents responsive to any discovery requests. These recordings and the other discovery will be the subject of an upcoming Motion to Compel.]

20.   During the conversations Plaintiff had with Mr. Mundy, where he called her, there was a pause prior to Mr. Mundy coming on the phone.   According to Plaintiff's expert Jeff Hansen,   this is a classic indication and extremely strong evidence that Plaintiff was called with an auto-dialer.

21.   In another conversation Mr. Mundy asked Plaintiff if she knew what a "black out" was.   When she said she did not he explained it is when you whole family is taken out.

22.   During the onslaught of calls Plaintiff repeatedly picked up the phone and begged Mr. Mundy to stop calling, however he would simply call right back the very next minute or sometime during the same minute.

23.     Mr. Mundy continued to call and attempt to harass her into giving money and said he would not stop until Plaintiff gave him money.

24.     Plaintiff was rendered helpless to stop the calls.  She even had her husband, a neighbor and a law enforcement officer ask Mr. Mundy to stop the harassing cell phone calls.

25.     Plaintiff called TracFone repeatedly and requested that her cell phone number be changed in order to stop the unwanted harassing calls. [Defendant has this information in their account notes]  Her number was eventually changed from (413) 214-2823 to (413) 301-3652, however, Plaintiff continued to receive the harassing calls to her TracFone cell phone.  Plaintiff also began receiving calls from Mr. Mundy on her other cell phones including (407) 267-9175.  Plaintiff reasonably believed that Mr. Mundy had access to her other cell phones because he had access to her TracFone account and all her personal information.

26.     Plaintiff called numerous times to TracFone and to numerous locations including Guyana, Guatemala, Honduras, and Jamaica, speaking with several different people in order to get the harassing calls to stop.  However, Mr. Mundy continued to call Plaintiff, according to him one time, from Guyana, South America.

27.     Plaintiff contacted TracFone's corporate office in Miami, FL and spoke with Anna (employee #56748), Michael Babaling (employee #57482), Hugo (employee #53203), and Gena (305) 715-6500 to attempt to get the harassing phone calls stopped.  Plaintiff was on hold for hours at a time before she was able to speak with someone about the harassing calls.  TracFone dismissed her complaints and even hung up on her.

28.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse and allowed their employee and or agent to continue.

29.     Additionally, Plaintiff spoke with Angel, Director of Operations at (315) 715-6795, to get the calls to stop.  Plaintiff was offered, "a year's worth of service, if she would agree not to obtain legal counsel."

30.     The harassing cell phone calls began on or about February 16, 2013, and continued through March 2013.  [Defendant's counsel sent a letter to the undersigned on October 17, 2013 claiming to include call records of the Plaintiff.  Please see Plaintiff's Exhibit "1" attached to this Amended Complaint.]  The letter states their call center shows "one call" to Plaintiff's TracFone on February 17, 2013 and "23 calls" between February 21, 2013 and March 29, 2013.  However, the tape recording of Mr. Mundy and Plaintiff's husband took place on February 18, 2013 and this telephone call is not documented in the call log produced by Defendant.   Furthermore, this 2/18/13 tape recording is 4 minutes and 24 seconds long, which is exactly the length of time documented in Plaintiff's AT&T records, which are attached as Plaintiff's Exhibit "2." Please see entry of ("4:24") on line 23 on AT&T phone records Bates stamped M100024.  Defendant's letter states, "there is no need to serve subpoenas to a phone company seeking call records. You have already been provided a complete record of call records which cover any calls possibly at issue…"  However, Plaintiff did subpoena phone records and so far has received only records from AT&T.  It is Plaintiff's reasonable belief that the Defendant is "out of network" meaning they use multiple phone companies when placing their calls from their call center.  Based upon the subpoenaed AT&T's records marked as Exhibit 2 the Defendant now admits at least

158 calls were placed to the Plaintiff.  Plaintiff's counsel has asked opposing to explain the discrepancies in the number of times they now admit and the number they first claimed, however no explanation has been given.  Plaintiff's counsel has done an initial analysis, although hard to decipher for a number of reasons, it appears that there were at least 158 calls made by the Defendant evidenced in the AT&T records. One thing is clear, the **Defendant called the Plaintiff 116 times from a TracFone number. (**Please see Bates stamp M100024 beginning at line 7)  If 18008677183 is called it is answered "Thank you for calling TracFone,"  The number 59205034 called the Plaintiff 33 times, this appears to be a number from Guyana made by Defendant.   The number 18007345870 also called 8 times, this number also appears to be spoofed.   The spoofing is reasonably believed by the Plaintiff because on numerous occasions the Plaintiff picked up the phone when the caller i.d. showed 18007345870 and it was Mr. Mundy who came on the line.  Upon knowledge and belief, the AT&T records reflect only calls that were answered.  For instance, on 2/18/13 Plaintiff picked up the phone 30 times.

31.   Defendant's own account notes, on 2/17/13, show the Plaintiff repeatedly calling the Defendant to complain about being called and harassed.   Please see account notes, which are included in Plaintiff's Exhibit 1 as Exhibit E to Defendant's letter.

.   32.   Despite being put on notice as early as 2/17/13, as can be seen from Defendant's account notes, that Plaintiff was being called and harassed, the Defendant chose to do nothing to stop it.   It can also be seen by these account notes that the Plaintiff asked for her number to be changed based upon the harassment.

33.     The Defendant, by and through their agent and or employee, Mr. Mundy proceeded to call Plaintiff approximately 6,141 times. Plaintiff provides this number based upon the below estimation of dates and calls, which she attempted to keep track of:

| DATE | NUMBER OF CALLS |
|---|---|
| 2/16/13 | 22 |
| 2/17/13 | 213 |
| 2/18/13 | 204 |
| 2/19/13 | 252 |
| 2/20/13 | 192 |
| 2/21/13 | 263 |
| 2/22/13 | 215 |
| 2/23/13 | 188 |
| 2/24/13 | 176 |
| 2/25/13 | 264 |
| 2/26/13 | 236 |
| 2/27/13 | 232 |
| 2/28/13 | 244 |
| 3/01/13 | 235 |
| 3/02/13 | 257 |
| 3/03/13 | 213 |
| 3/04/13 | 284 |
| 3/05/13 | 266 |
| 3/06/13 | 293 |
| 3/07/13 | 261 |
| 3/08/13 | 307 |
| 3/09/13 | 259 |
| 3/10/13 | 276 |
| 3/11/13 | 307 |
| 3/12/13 | 331 |
| 3/13/13 | 152 |
| **TOTAL:** | 6,142 |

34.     Moreover, counsel has strong reason to believe that additional records may be developed through discovery, which would further support Plaintiff's claims.

35.     Upon information and belief, each call the Defendant made to the Plaintiff was made using an "automatic telephone dialing system" ("ATDS") which has the

8

capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).  These telephone calls placed were done so using automated telephone dialing equipment, without human intervention.

36.     There is indeed an ample foundation for a reasonable inference that an ATDS was used with regards to the calls, which are the subject of this lawsuit.  During calls she answered, the Plaintiff noticed a telltale "delay" in connection at the beginning of the call, which is a hallmark of ATDS devices.  A reasonable inference may be drawn by the extreme number of calls that the assistance of an ATDS would be necessary to effectuate these calls.  The tape recordings in this case evidence that Mr. Mundy is using TracFone's system, which in all likelihood qualifies as an ATDS.  Once the Defendant provides adequate discovery responses including accurate call logs and documentation describing their phone system, and responds to the requests for admissions and interrogatories, it should be clear that Defendant used an ATDS and is in violation of the TCPA.  Plaintiff's expert agrees.  Plaintiff's counsel states this to the best of his knowledge, information and belief after inquiry reasonable under the circumstances.

37.     Plaintiff did not expressly consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice prior to Defendant's placement of the calls. In fact, Plaintiff revoked any consent to call her cell phone(s) that the Defendant may have thought they had.

38.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

39.     Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

40.     Plaintiff was particularly vulnerable to damage and abuse, having been previously crippled in an automobile accident whereby Plaintiff was hit by a drunk driver and is  suffering from post-traumatic stress disorder.  In addition, Plaintiff had a stroke and is battling bladder cancer.

## COUNT I

## Violation of the TCPA

41.     Plaintiff incorporates Paragraphs one (1) through forty (40).

42.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

43.     Defendant's violations of the TCPA were intentional and willful entitling Plaintiff to up to $1,500.00 for each call placed.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 25th, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system to the following CM/ECF participants: AWeiss@cfjblaw.com; AKaufman@cfjblaw.com; and mramudo@cfjblaw.com.

**I FURTHER CERTIFY** that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  NONE

Respectfully submitted,

*s/William Peerce Howard*
William Peerce Howard, Esq.
Florida Bar No.:  0103330
Attorney for Plaintiff
Morgan & Morgan,  P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone:  (813) 223-5505
Facsimile:  (813) 223-5402
WHoward@ForThePeople.com

11